# M. J. McCarthy, Appellee, v. S. V. Handley, Appellant.
## Gen. No. 26,601.

1. LANDLORD AND TENANT—*what constitutes subletting of garage.* Under a lease of premises to be occupied for a garage and for no other purpose, and covenanting against subletting without the lessor's written consent, a subletting was not created by an agreement with the postmaster for the housing of 33 mail trucks at a stated monthly payment, including water, power, light and other equipment, and the exclusive use of a gasoline storage tank and pump, also office fixtures, toilets and heating plant, and providing that the department should furnish fuel and take care of the heating plant, it appearing that the lessee retained space in the office for his desk and chair, and space in the garage for his tools and his work of repairing automobiles, which was continued, and that he retained space for his own automobile and another, and that if all 33 mail cars were in the garage at the same time, there would have been space for at least three other automobiles and also bench room.

2. LANDLORD AND TENANT—*license and grant by lessee distinguished.* The rule that whether an instrument is a license or a grant depends upon its construction as a matter of law and that if it merely confers a privilege to do an act under the owner, which without permission would be unlawful, it is a license, but if it grants exclusive possession of the premises against the world, including the owner, it creates an estate or interest in the land, applied where violation of a lease by subletting was claimed, and the act of the lessee in permitting a use of the premises which was not exclusive, was held to have been merely a license and not a subletting.

3. LANDLORD AND TENANT—*giving exclusive use of certain appliance by lessee as subletting garage.* The giving of the "exclusive use" of a gasoline tank and pump and other equipment under an agreement by a lessee with a third party for the housing of automobiles and the use of said equipment in the leased premises was not of importance in the construction of such agreement, which latter was held not to be a subletting in violation of the lease, but merely a license to use the premises for certain purposes not exclusive, and for a stated term.

Appeal from the Municipal Court of Chicago; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed with finding of fact. Opinion filed November 29, 1921.

RUDOLPH D. HUSZAGH and EDWARD G. BERGLUND, for appellant.

ROBERT J. NORDHOLD, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment in favor of plaintiff rendered by the municipal court of Chicago in an action in forcible detainer tried before a jury, who, as directed by the court at the conclusion of all the evidence, found defendant guilty of unlawfully withholding from plaintiff the premises in question, which were described in the complaint as "3350 and 3354 Southport avenue and building thereon." In plaintiff's bill of particulars he stated that his claim was based upon a violation by defendant of a certain covenant in a lease, in that defendant had sublet the premises in whole or in part without plaintiff's written consent.

On March 30, 1918, plaintiff by written lease demised the premises to one Verkler, "to be occupied for garage and for no other purpose," from April 1, 1918, until March 31, 1923, at a stipulated rental, payable in monthly instalments of $125. The lease contained the usual covenant that the lessee should not sublet the premises or any part thereof, or assign the lease, without first having obtained the lessor's written consent. Subsequently Verkler assigned all his right, title and interest in the lease to one Hoyt, and on February 7, 1919, Hoyt executed a similar assignment to defendant, who assumed and agreed to perform all the conditions of the lease and took possession of the premises and thereafter paid rent. Plaintiff gave his consent in writing to both of these assignments.

Over a year after defendant had taken possession of the premises, and had been conducting a public garage thereon, he, on April 14, 1920, made a written proposal to the postmaster at Chicago, Illinois, in

which he agreed "to *give space* to the post office department in my garage, known as the Handley garage, * * * for the *housing*, etc., of approximately 33 United States mail trucks, at a monthly payment of $290, including water, electric power and light, together with the exclusive use of the 500 gallon gasoline storage tank and pump; the 300 gallon oil storage tank; portable gasoline tank; automatic air compressor; wash rack and water heater; work benches; fire apparatus; office fixtures; two toilets, and heating plant." It is further stated in the proposal that "the post office is to furnish all fuel and to take care of the steam heating plant, hot water boiler, gasoline tank and pumps, and all other fixtures on said premises; * * * to take care of its own trucks, and to pay from time to time as they become due such portion of the electric power and light and water bills as may be in excess of an average total amount of $40 per month for the year"; and that "occupancy may be had May 1, 1920," and that "it will be understood by the post office department that my present lease expires March 31st, 1923, and I agree to give space in the premises to the post office department until that date at a monthly payment as stipulated above." The postmaster accepted the proposal and about May 1, 1920, and thereafter, the 33 mail trucks were, when not in use, housed in the garage; and the post office department made use of the equipment mentioned, and prior to July 1, 1920, complied with the provisions of the proposal and made the monthly payments of $290 to defendant for the months of May and June, 1920. Plaintiff filed his complaint in forcible detainer on July 2, 1920.

It further appears from the undisputed testimony, in substance, that some time in March, 1920, a real estate agent, named Bobel, acting for defendant, entered into certain negotiations with the post office department in Chicago; that subsequently defendant called on plaintiff, informed him of said negotiations,

and requested plaintiff's consent to the subletting of the premises to said department; that plaintiff refused to give his consent unless he received $25 per month as additional rent; that defendant refused to obligate himself for the additional rent and suggested that the lease be canceled and plaintiff purchase defendant's garage business and all of his garage equipment and supplies; that a tentative arrangement was reached between them whereby plaintiff was to pay defendant about $4,000,—about $3,000 for defendant's business, garage equipment and supplies, and $1,000 which had been deposited with plaintiff as security for the payment of rent for the last 8 months of the term of the lease,—and an appointment was made for the purpose of consummating the arrangement; that in the meantime plaintiff wrote the post office department that arrangements had been made whereby plaintiff could and would lease the premises to said department; that when plaintiff and defendant met as per appointment the question arose as to the payment of commissions to said Bobel for services in conducting the negotiations with said department, which commissions plaintiff refused to pay, and the proposed deal between plaintiff and defendant "fell through"; that subsequently defendant's said proposal of April 14, 1920, to said department was made, accepted and consummated; and that during the month of June, 1920, plaintiff was in the premises and collected the June rent due on the lease from the defendant and at that time saw some of the trucks of the post office department in the garage.

It further appears from the testimony of Arthur Hausser, plaintiff's witness and an employee of the post office department, that, while after said proposal of April 14 was accepted there were housed in the garage the 33 government trucks from time to time when not in use, said department did not take possession of the premises. And it further appears from the

undisputed testimony of defendant, in substance, that after the acceptance and consummation of said proposal, he retained space in the office of the garage for his desk and chair and space in the garage for his tools and his work of repairing automobiles, which was continued; that he retained space in the garage for his own automobile and Bobel's automobile and did not take down his garage sign; that the 33 government trucks came and went at all hours of the day and night, and that no particular space was assigned to them; and that if all of the 33 trucks were in the garage at one time, which seldom if ever happened, there would be space for at least three other automobiles and also bench room.

Several points are urged by counsel for defendant as grounds for a reversal of the judgment, but as we view the case it is only necessary for us to consider counsel's main contention which is, in substance, that under the undisputed evidence the court should have directed the jury to return a verdict in favor of defendant as requested by him and entered judgment thereon; and for the reason that defendant's said proposal to the post office department of April 14, 1920, as accepted and consummated, did not amount to a lease or a subletting of the premises, or any particular part thereof, but only gave said department a permission or license to use the premises for certain purposes and for a stated period, and did not give said department possession of any part of the premises as against the defendant. And counsel argue that, as the premises were leased for a "garage" and as there was space for the housing of at least 36 automobiles, clearly under the terms of the lease defendant could give accommodations for the housing of one truck of one owner and at the same time house the automobiles of 35 other owners, and that no reason is perceived why defendant could not agree to house such number of trucks or automobiles for one owner

as would nearly use the entire floor capacity of the garage.

In *City of Berwyn v. Berglund*, 255 Ill. 498, 500, it is said: "Whether an instrument is a license or grant depends upon the construction of the instrument as a question of law. If it merely confers a privilege to do an act or a series of acts under the owner which without permission would be unlawful, it is a license, but if it grants exclusive possession of the premises against the world, including the owner, it is not a license but creates an estate or interest in the land, \* \* \*." We think it is apparent, from the undisputed evidence in the present case, that by the accepted proposal of April 14, 1920, the defendant did not grant the exclusive possession of the premises to the post office department as against the defendant. (See also *Dickinson v. Hart*, 142 N. Y. 183, 185; *Reynolds v. Van Beuren*, 155 N. Y. 120, 123; *Daly v. Edwards*, 82 Law Times Rep. (N. S.) 372; *Lowell v. Strahan*, 145 Mass. 1, 12.) Counsel for plaintiff lays considerable stress on the fact that by said accepted proposal defendant gave to the post office department the "exclusive use" of the 500 gallon gasoline storage tank and pump and other equipment mentioned. We do not think that the words "exclusive use" are of importance in the construction of said proposal, except to show that with reference to the privileges given to the department defendant was not to give some of those privileges to owners of other automobiles. (*Daly v. Edwards, supra; Boston El. Ry. Co. v. Grace & Hyde Co.*, 112 Fed. Rep. 279, 286.)

Our conclusion is that the accepted proposal did not amount to a subletting of the premises by the defendant to the post office department and that the trial court erred in entering judgment in favor of plaintiff upon the directed verdict, and that it should be reversed.

*Reversed with finding of fact.*

BARNES and MORRILL, JJ., concur.

Finding of fact. We find as an ultimate fact that the defendant, S. V. Handley, by the written proposal of April 14, 1920, to the postmaster, at Chicago, Illinois, which was accepted by him, did not sublet the premises in question, or any part thereof, to said postmaster.