CHEMICAL PETROLEUM EXCHANGE, INC., Plaintiff-Appellant and Cross-Appellee, v. THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)    No. 78-1622

Opinion filed February 27, 1980.

Mark S. Lieberman, of Rosenthal and Schanfield, of Chicago, for appellant.

Allen S. Lavin, of Chicago (Ina S. Winston, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Chemical Petroleum Exchange, Inc., a lessee, brought suit against its lessor, defendant Metropolitan Sanitary District of Greater Chicago, seeking an injunction restraining termination of their lease. It also sought a declaratory judgment that an agreement between plaintiff and a third party did not constitute an unauthorized sublease. Defendant filed a counterclaim for forcible entry and detainer and for an accounting. The trial court dismissed defendant's counterclaim and entered judgment

for plaintiff, ruling that the third-party agreement did not constitute a sublease and that the lease between plaintiff and defendant remained valid. The court also ordered plaintiff to review its lease with defendant and to pay a reasonable sum in accordance with revenue derived through use of the public property. Plaintiff appeals from that portion of the judgment directing it to review its lease. Defendant appeals from the remaining provisions.

On February 11, 1954, defendant, a municipal corporation, leased to plaintiff approximately 10.34 acres of land in Forest View, Illinois, for a 50-year term ending February 28, 2004. The lease contained the following pertinent provisions: article 3.09 provided that defendant could terminate the lease if plaintiff defaulted or failed to perform a condition, and such conduct continued 90 days after written notice from defendant; article 6.02 provided that termination resulting from such default would cause all improvements to become the absolute property of defendant without compensation to plaintiff; article 7.01 authorized plaintiff to sublet the premises with the written consent of defendant.

Plaintiff installed improvements such as docks, pumps, and storage facilities and began operating a river terminal facility on the premises. In 1966 plaintiff entered into an agreement with Gustafson Oil Company, a Delaware corporation, in which plaintiff promised to accept and store on its premises all petroleum products delivered by Gustafson during a 12-year term ending August 4, 1978. Both plaintiff and Gustafson were subsidiaries of Koch Refining Company.

On February 8, 1978, defendant gave plaintiff a notice of termination of lease. The notice alleged that defendant's prior written consent was required for a sublease to be effective; that the Gustafson agreement constituted a sublease; and that by entering this agreement without defendant's consent, plaintiff materially breached the covenants and conditions of the lease. The notice also recited that since adoption of a resolution by defendant's board of commissioners on May 23, 1963, defendant required renegotiation of the rent established in the lease in return for its consent to any proposed sublease. Thus if plaintiff had requested consent to sublet, the property would have been reappraised and plaintiff's rent would have been increased.

On May 4, 1978, plaintiff filed the present action asking the court to enjoin defendant from terminating the lease and to declare that the Gustafson agreement did not constitute a sublease. Plaintiff alleged it would be irreparably harmed by termination of the lease prior to its stated expiration date because its improvements worth more than $1,500,000 would become the absolute property of defendant with no compensation to plaintiff. Defendant's counterclaim requested the court

to terminate the lease and restore possession of the premises to defendant, and to order plaintiff to account for monies received from Gustafson. The counterclaim also sought damages.

Plaintiff filed a motion to dismiss the counterclaim on the ground that it failed to state a cause of action since the Gustafson agreement did not, as a matter of law, constitute a sublease. Plaintiff further claimed that, even if entering the Gustafson agreement constituted a default or failure to perform a condition of the lease, such failure was cured by cancellation of the agreement within 90 days after receiving notice from defendant of the alleged default. Defendant's response stated, in pertinent part, that whether the Gustafson agreement constituted a sublease was not solely an issue of law, or alternatively, the agreement was a sublease; and that the purported cancellation did not cure the violation committed by plaintiff.

On June 23, 1978, after considering pleadings, memoranda, and arguments of counsel, the trial court entered an order dismissing the counterclaim on the ground that the Gustafson agreement did not constitute a sublease, and finding that the lease between plaintiff and defendant was still valid. The court also directed plaintiff to review its lease with defendant and to pay a fair amount of money in accordance with the revenue derived from its use of public property. On June 28, 1978, the court entered judgment for plaintiff on its complaint, but still directed plaintiff to review its lease with defendant.

We initially shall consider defendant's contention that the trial court erred in finding that the Gustafson agreement did not as a matter of law constitute a sublease. If the Gustafson agreement is not a sublease, plaintiff did not violate article 7.01 of its lease and defendant was not entitled to terminate the base lease.

The relevant provisions of the Gustafson agreement may be summarized as follows:

Under articles 1 and 2, plaintiff promised to accept and store on its premises all petroleum products delivered by Gustafson and to handle the loading of these products into barges and tank trucks.

Article 3 required Gustafson to pay for expenses incurred by plaintiff in operating the "Terminal Property," including salaries of personnel, rent, wharfage fees, utility charges, real and personal property taxes, and costs of maintenance and repair not to exceed $25,000 annually. Plaintiff was responsible for the payment of Federal, State, and municipal taxes. The parties fixed a minimum annual payment of $230,000, later increased, although the exact amount Gustafson was required to pay varied according to plaintiff's expenses and the quantity of petroleum products delivered.

Under article 4, plaintiff was authorized, with Gustafson's prior consent, to enter into third-party terminaling agreements and to store

petroleum products it acquired for resale. Revenues derived through such arrangements would be credited against Gustafson's financial obligations.

Article 6 provided that plaintiff would maintain inventory and product loading records, and article 5 authorized Gustafson to enter the premises during business hours to verify these inventories and measure the products stored.

Articles 7 and 8 directed plaintiff to keep the premises insured and required Gustafson, which retained title to the stored products, to insure the petroleum products.

Article 11 accorded plaintiff the right to assign the agreement as additional security for a promissory note to be issued to secure funds needed to satisfy an obligation incurred in constructing the terminal. In the event of a default on such note, Gustafson was entitled to assume management, possession and operation of the terminal property for plaintiff's account.

■■ ■ Whether or not the Gustafson agreement constitutes a sublease depends upon the construction of the instrument as a question of law. (See *McCarthy v. Handley* (1921), 222 Ill. App. 604.) The prime consideration in construing an instrument is to ascertain and effectuate the intention of the parties at the time of execution. (*South Center Department Store, Inc. v. South Parkway Building Corp.* (1958), 19 Ill. App. 2d 61, 153 N.E.2d 241.) In the document in question, the parties recited that the agreement did not create the relationship of principal-agent, landlord-tenant or joint venture. The agreement also stated that plaintiff was an independent contractor engaged to perform services for Gustafson. Since the legal effect to be given an instrument is not to be determined by the label it bears or the technical terms it contains (*Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883; *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645), we are not bound by the parties' characterization of their document as an agreement for services.

■■ ■ This court has defined a "lease," and accordingly a sublease as follows:

> "A lease is a contract for exclusive possession of lands, tenements or hereditaments for life, for a term of years, or at will, or for any interest less than that of the lessor, usually for a specified rent or compensation. [Citation.] A lease possesses the property of passing an estate in land; it partakes of the nature of an estate, and exclusive possession of the leased premises is essential to its character. [Citations.]" (*Urban Investment & Development Co. v. Maurice L. Rothschild & Co.* (1975), 25 Ill. App. 3d 546, 550, 323 N.E.2d 588.)

In contrast, an agreement which merely entitles a party to use the premises for a specific purpose, subject to the management and control

retained by the owner, does not constitute a lease, but rather, grants only a license. (*In re Application of Rosewell* (1979), 69 Ill. App. 3d 996, 387 N.E.2d 866.) We believe that the parties properly characterized the document as an agreement, but it does not possess the attributes of a sublease.

While the agreement entitled Gustafson to store its products on plaintiff's premises, it did not transfer exclusive possession to Gustafson. In fact, Gustafson was permitted to take possession of the facility only in the event of a default by plaintiff following an assignment of the agreement. Gustafson's access to the premises was limited to the inspection of inventory records and measurement of its products. The agreement did not grant Gustafson physical occupancy of any definite space. Plaintiff retained occupancy as well as control and management of the terminal. Plaintiff was responsible for undertaking the repair, maintenance and improvements of the property. Moreover, plaintiff was obligated to load and keep inventory records of products delivered by Gustafson. In view of the extent of control retained by plaintiff, Gustafson lacked the exclusive possession essential to the character of a sublease.

Relying on *In re Owl Drug Co.* (C.D. Nev. 1935), 12 F. Supp. 439, defendant places great stress on the fact that Gustafson could, by withholding its consent, bar third parties, including plaintiffs, from storing petroleum products on the premises. The situation presented in *Owl* is distinguishable from the present case. The lessee under the *Owl* agreement had an absolute right of occupancy, subject to lessor's right to change the situs. Moreover, the lessee used its own employees to manage and operate its store, and had an obligation to maintain and repair its location. Gustafson's power to preclude others from storing products at plaintiff's facility was a privilege not afforded other parties, but was not equivalent to exclusive possession of the premises. (See *McCarthy v. Handley* (1921), 222 Ill. App. 604.) Accordingly, we conclude that the trial court properly found that the Gustafson agreement did not, as a matter of law, constitute a sublease. Consequently, plaintiff did not violate its lease with defendant, and defendant was not entitled to terminate the lease. The lease remains valid and viable, and plaintiff retains its improvements until the expiration of the lease.

■■ We shall comment briefly on defendant's contention that the trial court erred in granting plaintiff's motion to dismiss defendant's counterclaim because the motion combined sections 45 and 48 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48.) We disapprove of the practice of combining a motion which inquires whether a pleading is sufficient to state a cause of action (section 45) with an examination which

almost necessarily assumes that a cause of action has been stated (section 48). (See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.) Nevertheless, defendant was not prejudiced in any manner by combining the two sections. The only section 48 matter set forth in the motion was the claim that, even if the Gustafson agreement were deemed to constitute a failure to perform a covenant of the lease, such failure was cured by plaintiff's cancellation of the agreement. We conclude that the trial court did not err either in ruling on or granting plaintiff's motion to dismiss the counterclaim.

We consider finally plaintiff's contention that, after correctly finding that plaintiff had not committed any breach of the lease, the trial court erred in directing plaintiff to review that lease and to pay defendant a sum based on the revenue derived from the use of public property.

In making this ruling, the trial court stated it was "obligated to protect not only the interest of the parties to the matter being litigated, but the interest of the public as well." The court observed the disparity between the annual rental of $1,302 received by defendant and the annual payment received by plaintiff pursuant to the Gustafson agreement. We do not believe, however, that the public interest and alleged disparity justify renegotiation of the lease.

In *Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary District* (1970), 131 Ill. App. 2d 527, 266 N.E.2d 405, the district argued that the rights and obligations of the parties to a lease for district property had to be viewed in light of the public interest which affected the character of the lease agreement. This court, however, reasoned that a municipal corporation is in the same status as other corporations with regard to its property. Additionally in *Chanslor-Western*, we noted that a municipal corporation's power to lease its property is proprietary in nature rather than an aspect of its governmental function.

■■ ■ Unless its charter clearly provides to the contrary, a municipal corporation must comply with its contractual obligations. (*Wall v. Chicago Park District* (1941), 378 Ill. 81, 37 N.E.2d 752; *City of Chicago v. United States Fire Insurance Co.* (1970), 124 Ill. App. 2d 340, 260 N.E.2d 276.) The lease between the parties in the present case set forth a graduated rent schedule which apparently contemplated appreciation in the value of the property. The lease did not impose any further obligation on plaintiff to renegotiate the rental based on any "disparity" between the amount paid for the property and the revenue derived from its use. Absent fraud, when a municipal corporation contracts in its proprietary capacity, it cannot later avoid its contractual obligations because the established rental is proved to be an inadequate price in light of current real estate values. (See *Arkansas Valley Compress & Warehouse Co. v.*

*Morgan* (1950), 217 Ark. 161, 229 S.W.2d 133.) Therefore, the alleged disparity between the rent paid by plaintiff and service fee paid by Gustafson cannot support the order to review the lease.

Moreover, the resolution adopted by defendant on May 23, 1963, does not warrant renegotiation. The resolution passed nine years after execution of the parties' lease instituted the policy of requiring rent renegotiation in exchange for defendant's consent to a proposed sublease. The purpose of the resolution was to assure taxpayers that sublessees would pay fair and current rentals. The resolution has no applicability here, however, since no sublease has been found to exist. We conclude that the trial court erred in ordering plaintiff to review the lease.

For the reasons stated, the judgment of the circuit court of Cook County granting injunctive and declaratory relief to plaintiff and dismissing defendant's counterclaim is affirmed. That portion of the judgment ordering plaintiff to review its lease with defendant and to renegotiate the rental is reversed.

Affirmed in part; reversed in part.

McGILLICUDDY, P. J., and RIZZI, J., concur.