HARRY HARTKE, Plaintiff-Appellant, *v.* RONALD CONN, Defendant-Appellee.

Third District    No. 81-292

Opinion filed December 7, 1981.

Ronald E. Boyer, of Fleming, Boyer & Strough, of Watseka, for appellant.

Frank J. Simutis, of Ackman, Marek, Boyd, Simutis & Bigott, Ltd., of Watseka, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Harry Hartke appeals from the judgment of the circuit court in favor of defendant Ronald Conn in Hartke's declaratory action against Conn. In the declaratory judgment action, Hartke had sought to have a written lifetime lease between the parties declared invalid and unenforceable. The circuit court upheld the lifetime crop-share lease. Consolidated for trial with the declaratory action was a forcible entry and detainer action, in which Hartke sought damages for an alleged breach by Conn of the written lease. Recovery was denied by the court in that action as well, with judgment entered on Conn's counterclaim for damages under the written lease. While no appeal is taken by either party from the forcible entry and detainer judgment, that action is implicated in this appeal. On appeal, the plaintiff Hartke contends that the written lease between the parties was invalid under the Statute of Frauds and also that such defense was properly pleaded by him in the declaratory judgment action. Alternatively, Hartke argues that even if the lease is enforceable, it created only a tenancy at will.

The record discloses that in 1963, Ronald Conn began farming two tracts of farmland in Iroquois County. One of the tracts belonged to Theodore Hartke, brother of plaintiff, and the other belonged to plaintiff Harry Hartke. From 1963 until 1973, Conn farmed the land as a tenant, under an oral year-to-year crop-share lease with the Hartkes. Sometime in the early part of 1973, the parties, including Harry Hartke's wife, Cora, who owned no interest in either of the farms, began discussing a longer term lease. The discussions included the Hartke's attorney. After their attorney and Conn had worked out the terms of the lease, on June 23, 1973, Conn went to the Hartke's home for the purpose of executing the written lease. The written lease, which now forms the subject of this action, was executed by Cora Hartke, Harry Hartke's wife, on behalf of Harry and his brother Theodore. Theodore Hartke was present at the time of the signing, but could not sign due to a stroke he had previously suffered. Harry Hartke was outside, doing chores, when the lease was executed. Cora Hartke signed each brother's name and then signed her own name to the lease. It is undisputed that she had no interest in the farmland subject of the lease. It is also undisputed that at the time she signed the lease on behalf of her husband and Theodore she had no written authority from them to act as their agent in the matter. The evidence did disclose, however, that Cora Hartke had executed checks for her husband and that she had taken an active part in the negotiations for the lease. The written lease provided for a 50-50 crop-share arrange-

ment between the parties and was to be effective from January 1, 1973, through the lifetime of the lessee Ronald Conn.

Cora Hartke informed her husband Harry that night that she had signed the lease for him during the day. No comment and no objection was made by Harry Hartke to that procedure either that day, or for years thereafter. In fact, Conn farmed the properties under the written lifetime lease from 1973 until 1979, when a dispute arose between the Hartkes and him. Harry Hartke had inherited his brother's tract of land in 1975. The 1979 dispute centered upon an accounting for grain between the parties. The Hartkes believed that Conn had sold some grain that belonged to them, under the lease terms. During that time, Hartke requested that his attorney prepare two cash-rent leases, with one-year terms, for the two parcels of land. The one-year leases were presented to the defendant, who refused to sign them, not wishing to affect in any way the written lease that was executed in 1973.

Thereafter, on November 2, 1979, plaintiff Hartke caused a notice to quit to be served upon the defendant Conn. The notice to quit stated that Conn was in default on the lease by his failure to account for the crops harvested. It informed Conn that Theodore Hartke, Harry Hartke and Cora Hartke were terminating the lease with Conn. It was signed by Alexander Edgar, attorney for Harry and Cora Hartke.

On May 27, 1980, a forcible entry and detainer action was filed by Harry Hartke against Ronald Conn, requesting possession of the farmland. Subsequently, on October 29, 1980, Hartke filed his declaratory judgment action, seeking a declaration of the parties' rights under the written instrument of June 1973. In the complaint, Hartke alleges that the written lease was not signed by him or by his brother, Theodore. The complaint further alleges that Cora Hartke was not the agent of either of the brothers when she signed the lease for them in 1973. Harry Hartke sought in the action to have the written lease declared invalid and unenforceable, and to enforce allegedly existing year-to-year oral leases. Plaintiff Hartke, on December 8, 1980, filed an amended complaint in the forcible entry and detainer action. In it Hartke alleged the existence of the written lease, though signed only by Conn. Further, Hartke alleged that the defendant violated the written lease in specified particulars and that the violations constituted a breach of the lease. It is also alleged in the amended complaint that a notice of forfeiture and demand were served upon the defendant Conn on or about November 2, 1979, and that the defendant refused to give up possession. Attached to the amended complaint was the written 1973 lifetime lease and a copy of the notice to quit. While the record is not before us from the forcible entry and detainer action, the above facts relating to that action were set forth in the

record of the declaratory judgment action, either in the evidence or as part of the court's findings of fact.

Ronald Conn filed an answer to the declaratory judgment action, admitting the execution and existence of the lease, but denying the matters as to unenforcibility. He also counterclaimed for damages, being the landlord's share of expenses he had incurred. The counterclaim was met by an answer of Hartke, containing general denials only. The forcible entry and detainer action, along with the declaratory judgment action, were consolidated for trial.

After the trial, at which a number of witnesses testified, the court entered its judgment order. In the declaratory judgment action, the court found that there was a valid lifetime lease of the property, as per the written lease agreement of June 1973. The court found that Cora Hartke was acting as the agent for Harry Hartke and Theodore Hartke at the time she signed the lease agreement on their behalf. The court further found that Harry Hartke had, by his subsequent conduct, ratified the act of Cora Hartke in executing the written lease as his agent. As to the effect of the Statute of Frauds upon the lease agreement, the court found that the Statute of Frauds has not been properly pleaded by the plaintiff Hartke in his complaint. In the forcible entry and detainer action, the court concluded that there had been no breach of the written lease by defendant Conn and that Conn was entitled to a judgment on his counterclaim, being a claim for expenses incurred by him on Hartke's account, totaling $6,039.36. The judgment order in the declaratory judgment action incorporated by reference the findings of fact and conclusions of law in the court's memorandum opinion, issued earlier. From the judgment in the declaratory judgment action, the plaintiff files the instant appeal. He raises several questions with respect to the applicability of the Statute of Frauds, as well as an issue with respect to the nature of the lifetime lease.

We need not reach the various issues raised by plaintiff concerning the Statute of Frauds, for we find that the statute was satisfied. It provides:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party. This section shall not apply to sales upon execution or by any officer or person pursuant to a judgment or order of any court in this state." (Ill. Rev. Stat. 1979, ch. 59, par. 2.)

It has long been established that no particular form of memorandum is necessary to satisfy the statute. As noted by the Illinois Supreme Court in *Kohlbrecher v. Guettermann* (1928), 329 Ill. 246, 250, 160 N.E. 142:

> "It is sufficient if there be a memorandum or note of the contract in writing, signed by the party to be charged or by someone by him duly authorized. Any kind of writing is sufficient to satisfy the statute, including hasty notes, memoranda in books, papers, letters and telegrams, if they contain on their face or by reference to other writings the names of the vendor and vendee, a sufficient description of the property to render it capable of identification, and the terms and conditions of the contract. [Citations.]"

It is also firmly established that:

> "[T]he contract need not be on a single piece of paper, but the writings taken together must contain all the essential elements to show a contract between the parties so that there is no need of parol proof of any of the terms or conditions of the sale or the intention of the parties. [Citation.] It is necessary that where various writings are involved, they be connected in some definite manner. [Citation.] The signed writing or writings must refer expressly to the other writing, or the several writings must be so connected, either physically or otherwise, as to show by internal evidence that they relate to the same contract. [Citation.]" *(Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 303-04, 390 N.E.2d 428.)

The question in that case was the enforceability of a real estate sales contract not signed by seller. However, there was a separate document, a direction to convey, which contained a legal description of the real estate and which was signed by the seller. In the direction to convey there was also reference to a deed of a specified date. Neither the deed nor the direction to convey contained the essential elements of price, terms, and conditions of sale. Those terms were contained in the real estate contract concerning the property, which contract was not signed by the seller. The court noted that all elements were present to satisfy the Statute of Frauds, if the three documents were taken together. It then stated the problem:

> "The problem is whether the unsigned real estate sale contract is so connected with the signed writings to show by internal evidence that they relate to the same contract.
>
> Commenting on such a situation, and citing *Western Metals Co. v. Hartman Ingot Metal Co.*, Williston writes:
>
> 'It is essential to examine specifically the papers not signed by the parties to be charged, which it is sought to incorporate with the paper or papers that are so signed, and determine whether the

unsigned papers have been adopted by the signed papers.' (4 Williston on Contracts §583, at 142 (3d ed. 1961).)

And Corbin, in commenting on the situation, writes:

'All that is required is that these writings shall so clearly evidence the fact that a contract was made, and what are its terms, that there is no serious possibility that the assertion of the contract is false.' 2 Corbin on Contracts §512, at 744-45 (1950).

The section entitled 'Basic Contract Provisions' of the real estate sale contract stated that 'Seller agrees to sell and convey said premises by stamped trustee's deed.' It was pursuant to the real estate contract that defendant Dine's attorney prepared all documents necessary to close the transaction which included the trustee's deed made in accordance with defendant Dine's pre-altered 'Direction to Convey.' Based upon the record in this case, it could reasonably be inferred that the 'Direction to Convey' at the time of Dine's original signature was based on the adoption of the then existing real estate sale contract." (72 Ill. App. 3d 296, 304-05.)

The court then concluded from an examination of the documents and the established facts that the documents were connected, so as to together satisfy the Statute of Frauds. The court added:

"There is nothing in the record before us, nor have defendants made any allegations to indicate the contrary or to suggest that a fraud is being perpetrated.

To decide otherwise would be to undermine the very purpose for which the Statute of Frauds was enacted, *i.e.*, the prevention of fraud. In *Loeb v. Gendel* (1961), 23 Ill. 2d 502, 505, 179 N.E.2d 7, the supreme court stated: 'This court has long recognized the inequity of allowing one to utilize the Statute of Frauds to work an injustice or fraud, and has refused in such cases to permit its assertion as a defense.' To allow defendants to successfully assert the Statute of Frauds as a defense in the present case would create such an injustice." 72 Ill. App. 3d 296, 305.

■■ ■ In the present case, the two documents which together form a sufficient basis to satisfy the Statute of Frauds are the notice to quit, served on Conn in 1979, and the written lease, executed in 1973. The notice to quit is the signed writing, while the written lease sets forth the essential and necessary terms and conditions of the agreement. The former is signed by the attorney for Harry Hartke, on his behalf. There can be no question as to the attorney's agency in executing the notice, as agent on behalf of Harry Hartke, for Hartke admitted it in his testimony at trial. Under cross-examination, Hartke unequivocally stated that Alexander Edgar was his attorney at the time Edgar signed and served the

notice to quit. Hartke also testified that he wanted the document prepared and that he wished the written lease to be terminated. Such testimony, admitting the fact of agency, is a judicial admission. As noted in *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 12, 415 N.E.2d 599:

> "Judicial admissions are conclusive and may not be contradicted. They may be: (1) those made in pleadings or other documents, or (2) testimonial. [Citation.] A testimonial judicial admission is one within the particular knowledge of the witness [citation] and, if the testimony is deliberate, clear and unequivocal as to facts within the party's peculiar knowledge, he will be held to such testimony as a judicial admission. [Citation.]" (See also *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 480, 232 N.E.2d 120.)

Judicial admissions are binding and conclusive and have the effect of withdrawing a fact or facts from issue and dispensing wholly with the need for proof of the admitted facts. (*Gagne v. Village of LaGrange* (1976), 36 Ill. App. 3d 864, 869, 345 N.E.2d 108; *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 480.) Thus, through his admissions in open court, Harry Hartke established that Edgar, at the time he signed and served the notice to quit with respect to the farmland, was acting as his agent. He also established that he intended that the document be prepared in order to terminate the written lease. While under the statute an agent's authority is required to be in writing (Ill. Rev. Stat. 1979, ch. 59, par. 2), where the fact of agency is admitted in open court by the person to be charged, the matter is established conclusively and the statute is satisfied.

■■ The notice to quit, signed by Hartke's agent, states his intention to terminate "the lease." It also specifically describes the property as "Approximately 105 acres (Section 1) in Onarga Township belonging to Theodore Hartke and approximately 114 acres (Section 11) in Artesia Township belonging to Harry and Cora Hartke." This property description, which was factually incorrect at the time of the notice (for Theodore was dead and Cora had no ownership interest), is identical in every respect with the property description set forth in the 1973 written lease. This absolute identity in the language of the property description, absolute down to the errors, indicates that the notice had reference to the prior written lease. Furthermore, the connection is indicated again in the fact that the notice is signed by Edgar, as attorney, on behalf of Theodore, Harry and Cora Hartke. This is another reference to the written lease, for it contained the names of those three persons as landlords. It is obvious from an examination of the two documents that the notice refers to the written lease of 1973. The notice is signed by an agent for Hartke, and the lease contains the essential terms and conditions.

The notice acknowledges and relies upon the written lease. The two, taken together, satisfy the statutory requirement of a signed memorandum indicating the contract. *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 390 N.E.2d 428.

That conclusion is further confirmed when the subsequent litigation by Hartke is taken into consideration. The original forcible entry and detainer complaint was filed to recover possession from Conn, and the notice to quit, with its reference to the written lease, was an obvious predicate to that action. No issue of the Statute of Frauds was raised when the action was first filed. From the filing of the initial forcible entry and detainer complaint it could be concluded that the Statute of Frauds was satisfied. (*Jones v. Lloyd* (1886), 117 Ill. 597, 601, 7 N.E. 119; 73 Am. Jur. 2d *Statute of Frauds* §596 (1974).) As to the connection between the notice to quit and the written lease, the connection is expressly admitted by the plaintiff Hartke in his amended complaint in the forcible entry and detainer action. In the amended complaint it is specifically alleged that the notice to quit has reference to the written lease. The two are attached to the complaint as exhibits. These subsequent judicial admissions of the connection underscore the correctness of our conclusion that the two documents can be read together for purposes of meeting the Statute of Frauds.

It is clear that long before Harry Hartke sought to avoid his written contract under the Statute of Frauds, by way of the declaratory judgment action, he had in fact acknowledged, in writing, and relied upon and sought enforcement of that very same written contract. This, all in addition to the fact that he and Conn had operated under the written lease from 1973 onward. Under all the circumstances, to allow Hartke to avoid the contract under the Statute of Frauds would be to allow him to utilize the Statute to work an injustice, a use to which the Statute, if it can be avoided, will not be put.

Nor does any assertion of alternative pleading alter this result. Clearly, it is permissible to make such alternative pleadings, without waiving a defense under the Statute of Frauds. (*Jones v. Lloyd* (1886), 117 Ill. 597, 601; 73 Am. Jur. 2d *Statute of Frauds* §596 (1974).) However, in the instant case, long before any assertion of the Statute, the plaintiff, through the notice to quit and the written lease, satisfied the writing requirements of the Statute. Furthermore, it can reasonably be inferred that the original forcible entry and detainer action was premised upon the notice to quit, which had reference to the written lease agreement. That original action was filed without interposing the Statute of Frauds, alternatively. It was filed months before the pleadings which first raised the Statute of Frauds issue. By the time the issue was raised, it was too

late. The plaintiff had satisfied the Statute. No avoidance of the written lease was available on that basis in the subsequent declaratory judgment action.

■■ The only other issue is whether the written lease is to be construed as creating a lease for the lifetime of Conn, as it states in the lease, or whether it merely created a tenancy at will. Plaintiff relies upon the established rule of law that a lease for years must have a definite and certain time at which it begins and ends, and if such time is not set, the agreement does not create a valid and legal lease for a term of years, but only a tenancy at will. (*Stanmeyer v. Davis* (1944), 321 Ill. App. 227, 53 N.E.2d 22; *Moran v. Commonwealth Edison Co.* (1979), 74 Ill. App. 3d 964, 393 N.E.2d 1269.) The problem with that argument as applied here is that the lease between the parties is not a lease for a term of years. Rather it is a lifetime lease. Such an estate was recognized at common law, as is evident in Blackstone's Commentaries. (2 Blackstone, Commentaries 120, 121; see also *Chemical Petroleum Exchange, Inc. v. Metropolitan Sanitary District* (1980), 81 Ill. App. 3d 1005, 1009, 401 N.E.2d 1203.) The essential characteristic is present enjoyment and possession, which Conn, as tenant under the lifetime lease, possessed. The parties clearly and unequivocally contracted and agreed upon a lifetime lease to Conn. We find no basis to strike down that agreement.

For the reasons stated, the decision of the Circuit Court of Iroquois County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.