LEONARD BESINGER, Plaintiff-Appellee, *v.* NATIONAL TEA COMPANY, Defendant-Appellant.

(No. 55290;

First District—September 13, 1971.

*Rehearing denied October 19, 1971.*

Wildman, Harrold, Allen & Dixon, of Chicago, (William J. Lederer, Max E. Wildman and Thomas H. Snyder, of counsel,) for appellant.

Herrick, McNeill, McElroy and Peregrine, of Chicago, (William T. McNeill, Ray W. Fick, Jr., and Robert W. Singer, of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Leonard Besinger (plaintiff) is the sole beneficiary of a land trust which holds legal title to a large parcel of vacant land in Carpentersville, Illinois. During June of 1961, a real estate broker and attorneys commenced negotiations in his behalf with National Tea Company (defendant) in contemplation of a long-term lease of the real estate. At the termination of these negotiations, later to be examined in some detail, plaintiff filed an amended complaint in two counts. Count I sought specific performance of the alleged lease contract by defendant. Count II sought damages for breach thereof. The trial court sustained a motion to dismiss Count I. The ruling was affirmed by this court upon considerations other than the issues presently to be determined. *Besinger v. National Tea Company*, 75 Ill.App.2d 395.

In due course, Count II proceeded to trial without a jury. The court found the issues in favor of plaintiff and awarded damages of $154,999.94. Defendant appeals; raising primarily the issue of validity of the alleged contract. A statement of pertinent facts follows.

During the spring of 1961, an employee of defendant named Chester W. Cooke contacted plaintiff's real estate broker. This led to various conversations and discussions. As a result, on June 12, 1961, plaintiff wrote a letter to defendant which described itself as a "commitment to lease." The letter contained ten numbered paragraphs with general provisions of a proposed lease of the vacant property to defendant for 15 years with three five-year options and a provision that defendant was to construct a commercial building upon the vacant property. The tenth paragraph provided for inclusion in the lease of "Other provisions usually

and customarily included  *  *  *" in such documents in the Chicago area.

This commitment was followed by a telegram sent to plaintiff by defendant on July 17, 1961, which stated, "We accept your offer of June 12th with all items and conditions." Various additional letters passed between defendant, plaintiff's broker and plaintiff's legal counsel. As a result, and on August 15, 1961, one of plaintiff's attorney sent Cooke an original and two copies of a proposed lease.

Plaintiff's counsel and Cooke continued their discussions and correspondence. It was agreed that the duplicating machine owned by defendant should be used to prepare the lease for execution. Accordingly, on September 13, 1961, plaintiff's counsel sent Cooke an original of the proposed lease reflecting all changes agreed upon to that date with the request that it be duplicated and returned to counsel, "for execution" by the client.

On October 2, 1961, Cooke sent the attorney five copies of the proposed lease for execution by plaintiff. This letter also stated, "When returning the leases to me for execution by our management I request that the survey referred to in the Demise Clause be attached to all copies." Cooke signed this letter: "C. W. Cooke, Manager Real Estate Department." This lease document contained blank spaces for signature by an undesignated person in behalf of defendant and also by its secretary and for acknowledgement of the signatures of defendant's president and secretary before a notary public.

The finalized copies of the lease were dated October 9, 1961. Plaintiff obtained execution and acknowledgement of three copies of the lease by the officials of the corporate trustee holding legal title to the property. On October 23, 1961, plaintiff's counsel sent three copies of the executed lease to Cooke. The letter of transmittal stated, "Please return two fully executed copies to me."

Thereafter, conversations between the parties continued. On October 31, 1961, at the request of Cooke, plaintiff's legal counsel sent him a letter signed by plaintiff which provided that rent would not be due under the lease until six months from October 25, 1961. This was because of, "*  *  *  considerable delay involved in execution of the lease *  *  *." In addition, at the same time, at the request of Cooke, plaintiff's counsel sent him a memorandum or summary of the lease completely executed by the corporate trustee.

A week or ten days later, one of plaintiff's attorneys called Cooke and inquired about the executed leases. The lawyer testified that Cooke told him that he would receive them "in the next few days." The testimony also is that upon subsequent conversations Cooke said that the delay was

caused by internal office procedures and that the leases would be forthcoming very shortly or within a few days. On the contrary, Cooke testified that he never told either of the attorneys for plaintiff that they had nothing to worry about or that the lease would be signed in due course. and returned. There is also testimony that Cooke at one time advised plaintiff himself that it would be necessary to obtain approval of the lease by the directors of defendant. In any event, regardless of the merits of these various contentions, neither the lease nor the memorandum was ever executed by defendant.

On November 20, 1961, counsel for plaintiff wrote Cooke and remonstrated against the delay in returning the executed leases. This communication reviewed a portion of the negotiations between the parties. It referred to the fact that executed copies of the lease had been promised to plaintiff's counsel by Cooke and never received. The letter demanded delivery of the executed lease on or before November 23, 1961. No written reply to this letter was ever made and the executed leases were not returned. On December 21, 1961, counsel for plaintiff again wrote to defendant and summarized the negotiations between the parties. This letter pointed out that plaintiff had been obliged to refused another lease offer and "final demand" was made upon defendant to execute and deliver the leases.

There is also evidence that, in a telephone conversation on or about December 1, 1961, counsel for plaintiff advised Cooke that unless the signed leases were returned within five days the transaction would be terminated. On December 28, 1961, Cooke sent counsel for plaintiff a letter with which he returned the unsigned leases. This letter made reference to the telephone conversation. Plaintiff then proceeded with other arrangements for a lease of the vacant real estate.

On appeal, defendant contends that the written commitment for lease sent to defendant by plaintiff on June 12, 1961, together with defendant's telegram of acceptance sent plaintiff on July 17, 1961, are legally insufficient to create an enforceable contract. Defendant further contends that the final draft of the leases completely executed by the lessor together with the letter dated October 2, 1961, signed by Cooke wherein the documents were sent to plaintiff's counsel for execution by the lessor and to be returned "for execution by our management" similarly did not create an enforceable contract because Cooke was not authorized in writing by defendant to execute the leases in questions as specified in Section 2 of the Statute of Frauds. Ill. Rev. Stat. 1969, ch. 59, par. 2. Defendant also contends that the parties never agreed to plans and specifications of the contemplated building so that the purported lease was unenforceable. The final contention of defendant is that the trial court ap-

plied an erroneous measure of damages by assessing the amount of ground rent that would have accrued under the lease until another tenant actually commenced payment of rent, in disregard of the remainder value of the building which defendant was to construct.

However, plaintiff counters with the contention that the lease agreement which defendant breached consists of the letter of commitment and the accepting telegram together with the final lease duly executed by the lessor and the letter of transmittal dated October 2, 1961, signed by Cooke in defendant's behalf. Plaintiff further contends that this lease agreement complies with the Statute of Frauds so that it is valid and enforceable. Plaintiff maintains that the failure of defendant to furnish plans and specifications constituted a breach of the lease agreement by defendant itself upon which it cannot rely for its own benefit. Finally, plaintiff urges that the measure of damages applied by the trial court was legal and proper. No point on the pleadings is raised by either party.

In our opinion, the basic and decisive issue is determination of applicability of Section 2 of the Statute of Frauds to the transaction. Plaintiff argues strongly that the Statute of Frauds, requiring written authority to the signing agent, does not apply to employees and agents of a corporation. This is based upon the unassailable premise that a corporation can act only through its agents and employees. However, plaintiff cites no authority in behalf of its position which would exempt corporations from operation of the Statute of Frauds.

Plaintiff relies heavily upon *Geary v. Great Atlantic & Pacific Tea Co.*, 366 Ill. 625. There, the lessee sent an original and duplicates of a renewal lease for one year to the lessor by mail with the request that the copies be signed and returned. The lessor executed the leases and returned them to the lessee by mail on March 7, 1931, at 10:30 A.M. On the same day, at 1:30 P.M., the lessee sent the lessor a notice of withdrawal of the offer to lease. The court held that the renewal lease was binding upon the lessee without its actual execution. This result is based upon elementary contract law that the transmission of the leases by mail to the lessor for signature was an offer by the lessee to renew the lease and that this offer was accepted when the acceptance was posted. As a corollary, withdrawal of the offer by the lessee did not become effective until actually received by the lessor which was, of course, after acceptance of the offer. The distinction between the case at bar and Geary is immediately reached. There, the renewal lease was for a period of one year. The Statute of Frauds was not applicable by its express terms and was not considered by the court.

■■ Defendant relies principally upon two authorities. In *Potter v. Fon du Lac Park District*, 337 Ill. 111, the president of the Board of

Commissioners of a park district signed a contract to buy land. The Board had specifically authorized this purchase at the stated price. In a suit for specific performance of the contract, the District defended on the ground that the transaction was within the Statute of Frauds and that there was no written authorization to the president to sign the contract. The Supreme Court rejected this contention and enforced the contract. The court stated specifically that the Statute of Frauds does apply to a corporation as it does to an individual; but, since the executive officer of the corporation actually signed the contract more as principal than as agent, the contract would be enforced. This result is also supported by the resolution of the Directors for purchase of the property at the price paid. However, this exception is limited to the executive officer of the corporation. We regard this decision of the Supreme Court as determinative of the rights of the parties here. We quote the pertinent language (337 Ill. 111 at 120):

"It is next contended that the president of the park board was not authorized, in writing, to execute the contract, and that therefore the same is within the Statute of Frauds and void; that to take the case out of that statute it was necessary that defendant in error prove that a resolution was duly passed by the park board expressing the terms of the contract and directing some officer to execute the same. The Statute of Frauds applies to a corporation as it does to an individual. It may, however, sign by an agent. The contract in this case was signed, 'Fon du Lac Park District of Tazewell county, by John C. Tjaden, its president.' The president is the head and one of the executive officers of the park board, and in signing a contract does not do so as agent but rather as principal. The rule as to agency does not apply to an executive officer of a corporation, who is more than an agent. (*Henry v. Black*, 210 Pa. 245, 59 Atl. 1070; *McCartney v. Clover Valley Land Co.*, 232 Fed. 697.) The records of the park board show that the president was directed to negotiate for the land and that the board determined to purchase it at a certain price. This is sufficient to prevent the application of the Statute of Frauds."

██ The stated exception concerning a president or executive officer of a corporation does not and cannot apply to Chester W. Cooke, who signed the letter of transmittal dated October 2, 1961. Cooke was not an officer of defendant. His title was "Manager Real Estate Department." There is no evidence of any written authority to finalize a transaction of some magnitude specifically vested in him by the directors of defendant. In the letter of October 2, 1961, he expressly stated that the lease was to be executed "* * * by our management * * *."

Defendant also cites and relies upon *Koufman v. International Business*

*Machines Corp.*, 295 F.Supp. 784. That case involved a contract for leasing for a term exceeding one year. The court refused to enforce the claimed contract which consisted in part of an acceptance signed by an agent of the corporate defendant. This decision was reached upon grounds not material here and also upon the basis of the Statute of Frauds. The marked similarity between the New York Statute and that of Illinois will appear from the following quotation of the language of the court. (295 F.Supp. 784 at 789):

"It remains to point out that the statute of frauds is a bar to plaintiff even if the documents alone were held to create a contract. The 'acceptance' of June 24, 1963 is signed by Roper. It is beyond dispute that he had no actual authority to contract for IBM. I would agree with plaintiff that Roper had apparent authority to do so. Under the New York statute of frauds, however, this is not enough, for General Obligations Law § 5-703(2) requires that the writing must be 'subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing'. A corporation may only act by agents. Neither Roper nor Daly was authorized in writing to contract for IBM which thus could not in any event be bound by any contract made by them to which the statute of frauds is applicable. *Mondrus v. Salt Haven Corp.*, 270 App.Div. 1030, 63 N.Y.S.2d 205 (2d Dept. 1946), motion for leave to appeal denied 270 App. Div. 1046, 63 N.Y.S.2d 839; *Goldberg v. Spruce Ridge Corp.*, 35 Misc.2d 253, 229 N.Y.S.2d 307 (Sup. Ct. 1962); 2 Corbin on Contracts § 526 at 781-782 (1950)."

We reach the conclusion that section 2 of the Statute of Frauds is applicable to this transaction; and, therefore, that the negotiations between the parties never reached the point of formation of a valid and enforceable contract. We have given thorough consideration and much thought to the remaining contentions of the parties as above outlined. However, in view of the decisive nature of our conclusion that the transaction is within the Statute of Frauds, all remaining questions raised have no significance and need not be answered in this opinion.

The judgment for money damages in favor of plaintiff should be and it is hereby reversed. The cause is remanded to the Circuit Court of Cook County with directions to enter a judgment for the defendant and against the plaintiff.

Reversed and cause remanded with directions.

BURKE, P. J., and LYONS, J., concur.